# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case Number 1:20-cv-00280 Martinez v. CHRISTOPHER CAGGIANO et al

PATRIC MARTINEZ,

Plaintiff

v.

CHRISTOPHER CAGGIANO,

CHAD BENKELMAN,

And

EMILY CARRENO,

Defendants.

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

## I.     INTRODUCTION

1. In a dispute over when a $20.00 cab fare would be paid, Englewood police officers Christopher Caggiano, Chad Benkelman, and Emily Carreno brutally and savagely beat Patric Martinez so badly that they feared for his life and called an ambulance to rush him to the hospital.

2. Martinez suffered such traumatic injuries at the hands of the Englewood Police that he was given an MRI, and incurred medical bills of almost $20,000.

3. For the want of a $20.00 cab fare, Englewood police officers mercilessly kicked, beat, punched, threw the Plaintiff threw a glass cabinet, threw him face first into broken glass, and angrily ground his face into broken glass as he plead with them to stop.

4. Even the Arapahoe County Judge hearing the Plaintiff's misdemeanor resisting arrest case – because yes even though they willfully and wantonly battered the Plaintiff, Englewood's finest arrested the Plaintiff and charged him with resisting their beating – declared that the Plaintiff's fourth amendment rights had unquestionably been violated.

5. This suit now follows.

## II.     JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. §§ 1983 and 1988. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

7. This case is brought in the United States District Court for the District of Colorado pursuant to 38 U.S.C. § 1391, the judicial district where all relevant events occurred, and in which Defendants reside or maintain offices.

### III.   PARTIES

8. Plaintiff Patric Benn Martinez is a citizen of the United States and a resident of El Paso County, Colorado. At all times relevant to this complaint, Patric Benn Martinez

9. Defendant Emily Carreno is a city of Englewood Police Officer, and a citizen of the United States. At all times relevant to this complaint Defendant Carreno was working for the City of Englewood Police Department, located in the state of Colorado.

10. Defendant Christopher Caggiano is a city of Englewood Police Officer, and a citizen of the United States. At all times relevant to this complaint Defendant Caggiano was working for the City of Englewood Police Department, located in the state of Colorado.

11. Defendant Chad Benkelman is a city of Englewood Police Officer, and a citizen of the United States. At all times relevant to this complaint Defendant Benkelman was working for the City of Englewood Police Department, located in the state of Colorado.

### IV.   FACTS

12. February 3, 2019, the Plaintiff took a cab ride home from a gentleman's club in Denver to his home on Elati St. in Englewood, Colorado.

13. The Plaintiff was unable to pay his cab fare home due to his having lost his wallet.
14. The Plaintiff owns his own home, and there were no doubts about his ability to pay the $22.00 fare.
15. The cab driver, wanting financial satisfaction that night, though he had been assured of the Plaintiff's ability to pay him in the morning, called 911, risking the life of the Plaintiff over $22.00.
16. 911 dispatched officers Christopher Caggiano and Emily Carreno to the Plaintiff's home at 4375 Elati Street, Englewood, Colorado.
17. Carreno arrived first, arriving on a "no pay on cab fare" call into 911.
18. Carreno alleges that the Plaintiff was intoxicated when she arrived, though the Plaintiff was never tested for the presence of alcohol nor intoxicants, even though he was hospitalized.
19. Furthermore, medical records show no intoxication, and it's likely that Carreno testified to this and placed it in her report in order to make the Plaintiff look belligerent.
20. Instead, video footage shows that Carreno approaches the Plaintiffs house as if he's a threat, and enters the Plaintiffs home with aggression, intending to commit a battery on the Plaintiff.
21. Carreno perjured herself during the Plaintiffs trial for resisting arrest, claiming that the Plaintiff invited her into his home, but she refused, choosing to "wait for her partner" (Caggiano).

22. Carreno asserts that the Plaintiff invited Carreno into his home, which is patently false.
23. Plaintiff feared for his safety as soon as Carreno arrived, and her body language shows why.
24. Carreno attempted to gain control of the situation by acting aggressively and in a threatening manner towards the Plaintiff, who was standing in his own home, scared, justifiably it turns out, for his safety.
25. Carreno should have waited for her backup, especially if she was uncertain, as she testified to, of the layout of the Plaintiff's home.
26. Instead, Carreno, an inexperienced officer, charged into the Plaintiffs home, without a warrant, without probable cause, and began to commit battery upon the Plaintiff.
27. It is worth noting that Petty theft is a municipal offense in Englewood, Colorado – and that no arrest was needed in order to serve Mr. Martinez with a theft ticket.
28. Carreno could have written Mr. Martinez a ticket, handed it to him, and left.
29. Instead, Carreno decided to enter Mr. Martinez' home and brutalize him with her partner and a third police officer.
30. Officer Caggiano would arrive shortly afterwards.
31. Upon entering the home, Carreno testified that she told the Plaintiff that he was under arrest.
32. According to Carreno's testimony, she and Caggiano "struggle[ed]" with the Plaintiff for 2-3 minutes before a third officer (Chad Benkelman) arrived.

33. In reality, Carreno and Caggiano began assaulting the Plaintiff prior to Benkelman's arrival, and Carreno admitted under oath in the Plaintiff's trial that the physical abuse cranked up a notch once Benkelman arrived.

34. The EPD officers threw the Plaintiff through a glass shelf, or as Carreno admits the Plaintiff's "head struck a decorative wall shelf" while officer Carreno "had one of [the Plaintiff's arms]" while officer Caggiano beat up the Plaintiff until all three officers and the Plaintiff fell and the Plaintiff's head "struck the wall."

35. Carreno also testified that while the three police officers were in the Plaintiffs home, over a $22.00 unpaid cab fare, that officer Caggiano repeatedly struck the Plaintiff with his knees, employing what Carreno describes as a "knee strike."

36. What she did not mention was that Caggiano was deploying a "knee strike" to the back of the Plaintiffs skull, while his face was in a pile of glass that was created when the Defendants "fell" the Plaintiff through a glass display case.

37. Succumbing to his beating and his injuries, the Plaintiff was handcuffed, and emergency medical personnel on the scene determined that he had been beaten so badly that he needed to be sent to the emergency room.

38. Once at the emergency room of Swedish hospital, the Plaintiff was so upset and emotionally wrought that he needed to be sedated.

39. The Plaintiffs face was cut, he had suffered head injuries, and physicians determined that he needed a CT scan to check for brain damage.

40. Physicians at Swedish performed CT scans on both the Plaintiff's skull and face to determine the extent of his injuries

41. The emotional injuries from the fourth amendment violation and physical brutality that the Plaintiff underwent forced him to sell his home because he could no longer deal with the emotional trauma of living in the house where he had been savagely beaten.
42. Subsequent to his beating, the Plaintiff was charged with both theft, resisting arrest and disorderly in Arapahoe County, Colorado, case number 2019M310.
43. The Plaintiff took the case to a jury trial where he was found guilty of the resisting and disorderly charges, but not guilty of the theft.
44. The Jury was not given a self-defense instruction, and the Plaintiff/Defendant did not assert self-defense in his testimony.
45. The Plaintiff is not attempting to challenge the validity of his arrest, nor the underlying facts.
46. The Plaintiff admits that he did not pay the cab fare the night of his beating, the issue that the Plaintiff wishes to address is the reasonable of the officer's conduct, and the excessiveness of the force used on the night in question.

## **FIRST CLAIM FOR RELIEF**

Excessive Force Under 42 U.S.C. § 1983

47. Plaintiff hereby asserts and incorporates all former paragraphs as if hereby stated.
48. The degree of force used by Defendants as excessive, unreasonable, and unwarranted.
49. Defendants' actions were intentional, willful, malicious, egregious, grossly reckless and negligent, unconscionable, and unprovoked.

50. As a result of the excessive force and brutality inflicted on the Plaintiff, he received lacerations across his face, and medical bills in the tens of thousands of dollars.

51. Additionally, because of the brutal beating he suffered, Plaintiff suffered serious emotional and psychological distress. Plaintiff could no longer reside in his house and was forced to sell it.

52. All of the aforementioned acts of the Defendants constituted excessive force under the laws of the State of Colorado and the Defendants are liable for said damage.

## **PRAYER FOR RELIEF**

53. Actual damages in an amount to be determined at trial; and

54. Punitive damages in an amount to be determined by the jury at trial; and

55. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988

56. Such other relief as this Court deems just and proper.

DATED: April 13, 2020

*/S Matthew W. Buck*
Counsel for the Plaintiff
RED LAW
445 Broadway Suite 126
Denver, CO 80203
matt@red.law
720-507-1884